UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                   CRIMINAL NO. 06-20248

-vs-                                HON. JOHN CORBETT O'MEARA
                                      HON. DONALD A. SCHEER

D-2 ELFAT EL AOUAR,

        Defendant.
_____/

**GOVERNMENT'S WRITTEN PROFFER IN SUPPORT
OF ITS REQUEST FOR DETENTION PENDING TRIAL**

      The United States of America, by Kenneth R. Chadwell, Assistant U.S. Attorney, hereby proffers the following information, pursuant to 18 U.S.C. § 3142 (f), in support of its request that defendant be detained pending trial as presenting a serious risk of flight:

    1. On May 10, 2006, defendant Elfat El Aouar was indicted by a federal grand jury on four counts of Income Tax Evasion, in violation of 26 U.S.C. § 7201. The maximum penalties for this offense are 5 years imprisonment and a $250,000 fine. Because of the large amount of tax evaded, the U.S. Sentencing Guideline range

applicable to defendant is 63 to 78 months.

2. Elfat El Aouar was born on February 9, 1967 in Lebanon. She is a citizen of Lebanon and also a naturalized U.S. citizen. Defendant El Aouar is fluent in Arabic and English. She holds an M.B.A. and was once the Vice President of Finance for La Shish, Inc. On August 22, 2000, Elfat El Aouar entered into a marriage with Defendant Talal Chahine under the tenets of Shia Islam. Although the marriage occurred within the State of Michigan, it was never registered under U.S. law. The union produced three children: Aya, Noor, and Ibrahim Chahine. Each of the Chahine minor children have currently valid U.S. passports. While still married to Elfat El Aouar, on August 11, 2004, Chahine married Abir El Harake, another Lebanese citizen. Chahine kept El Harake at 274 S. Gulley in Dearborn Heights, Michigan and El Aouar and his three children at the Cooke Avenue residence. The Chahine/El Harake marriage has ended in divorce but, as of April 2005, El Aouar remained married to Chahine.

3. Elfat El Aouar has a currently valid U.S. passport (voluntarily surrendered by defense counsel to the government on 5/18/06) and a currently valid Lebanese passport (location unknown). On April 11, 2006, Elfat El Aouar flew from Detroit Metropolitan Airport with her three children to Paris, France and on to Beirut,

Lebanon to join Defendant Talal Chahine there. (Talal Chahine fled the United States to Lebanon in September 2005 a few months after the government executed search warrants at the headquarters of La Shish, Inc. and at Chahine's residences. He has never returned.) The Chahine children utilized their U.S. passports on the trip to Lebanon, returning on approximately April 29, 2006. Elfat El Aouar utilized her Lebanese passport on the trip to Lebanon and her United States passport on the return trip. El Aouar also visited Chahine in Lebanon during December 2005 utilizing her Lebanese passport. This trip was taken without her children. El Aouar's parents recently stated, in the presence of government counsel, that El Aouar visited Saudi Arabia with Chahine and Chahine's brother. A review of El Aouar's U.S. and Lebanese passports by the Court will reveal frequent international travel. Moreover, El Aouar's parents recently stated, in the presence of government counsel, that El Aouar already has plans to return to Lebanon with her children during the summer of 2006.

    4. When Elfat El Aouar was arrested on May 18, 2006, she falsely claimed not to know the location of her passports or her children's passports. Similarly, on the same day, Defendant El Aouar falsely told Pretrial Services that she had no currently valid Lebanese passport.

5. Lebanon maintains a consulate at 1959 Jefferson in Detroit, Michigan. If the Court were to seize Defendant El Aouar's passports, she could obtain a new Lebanese passport through the consulate within two weeks' time. The government is aware of persons who have done this very thing. Additionally, at least one employee of La Shish, who is beholden to Chahine, has family connections with the Lebanese consulate. (In El Aouar's case, the consulate may be will to "deliver" the appropriate paperwork to enable El Aouar and her children to obtain Lebanese passports if the Court were to order surrender of all passports and house arrest.) The United States does not currently have an extradition treaty with the country of Lebanon. Accordingly, El Aouar's flight to Lebanon would completely prevent this case from going forward against her.

6. Elfat El Aouar currently resides at 49428 Cooke Avenue in Plymouth, Michigan, a home owned by Defendant Talal Chahine. She has no real property or businesses in her own name.

7. If El Aouar did flee the United States, the investigation shows that she would have access to huge sums of cash to facilitate her flight and to survive for the rest of her life in Lebanon. As set forth in the Indictment, El Aouar personally oversaw the maintenance of a double set of computerized books and records, one real and one

altered, for La Shish, Inc. A complex computer program artificially and systematically reduced the amount of receipts in the form of cash received by the restaurants over a five year period – 2001, 2002, 2003, 2004 and 2005, although only the earliest four tax years are currently charged. This resulted in more than $20,000,000 in cash being skimmed from the business. This money is missing from the United States. Elfat El Aouar, and Chahine, supervised the conversion of this cash into cashier's checks made out to individuals in Lebanon and also to the shrinking of the size of the cash from small denominations into larger denominations to facilitate its smuggling out of the country. When the IRS searched the La Shish headquarters on April 19, 2005, for example, more than $1,000,000 in cash was recovered. The searches also revealed the following transactions:

> a. On 4/10/01, a letter signed by Talal Chahine asking Fransabank to transfer $990,000 from his account at Fransabank to his account at Banque de la Mediterranee;
>
> b. On 6/13/01, a letter signed by Talal Chahine asking Byblos Bank to transfer $500,000 from his account at an unknown bank to his account at Byblos Bank;
>
> c. On 9/7/01, a letter signed by Talal Chahine asking Byblos Bank to transfer $1,000,000 from his account at an unknown bank to his account at Byblos Bank.

8. During the tax evasion scheme, Elfat El Aouar also personally handled millions of dollars which had been laundered through Lebanon and sent back to the United States, structured financial transactions to evade bank reporting requirements, and procured structured and non-structured cashier's checks made out to individuals in Lebanon for purposes of smuggling the skimmed cash out of the country. For example, on March 20, 2000, Elfat El Aouar went to five different banks and procured five cashier's checks all made out to Mariana El Haj (in Lebanon) for $9,800, $2,850, $9,800, $9,800, and $9,800. El Aouar personally purchased at least $272,750 in structured and unstructured cashier's checks made out to individuals in Lebanon from the skimmed cash.

9. Effective October 8, 1997, then Secretary of State Madeleine Albright made findings, pursuant to 8 U.S.C. § 1189(a)(1), that Hizballah, a/k/a "Party of God," a/k/a "Islamic Jihad," is a foreign organization that engages in terrorist activity which "threatens the security of United States nationals or the national security of the United States." Thus Hizballah was designated as a foreign terrorist organization. Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650, 52650-1 (1997). This worldwide terrorist organization is centered in the south of Lebanon, composed of Shiite Muslims, dominated by and allied with Iran, and headed by it's Secretary

6

General Hassan Nasrallah. Prior to September 11, 2001, Hizballah had murdered more Americans that any other foreign terrorist organization. For example, the United States District Court for the District of Columbia found that Hizballah, in cooperation with the Islamic Republic of Iran through the Iranian Ministry of Information and Security (MOIS), murdered 241 American servicemen in their sleep during a suicide bombing of the U.S. Marine Corps barracks in Beirut, Lebanon on October 23, 1983. Peterson v. Islamic Republic of Iran, 264 F. Supp. 46 (D.D.C. 2003). Sheikh Muhammad Hussein Fadlallah, Hizballah's chief "spiritual leader," reportedly issued the fatwa (religious ruling) authorizing the Marine Corps barracks bombing. E.g., Avi Jorisch, Beacon of Hatred: Inside Hizballah's Al-Manar Television 8 (2004).

10. Sheikh Fadlallah has been designated by the U.S. Department of Treasury's Office of Foreign Asset Control (OFAC) as a Specially Designated Terrorist based upon his status as a leading ideological figure within Hizballah, thus making financial transactions with the Sheikh unlawful.

11. In August 2002, Elfat El Aouar and Chahine attended a fund raising event in Lebanon. The keynote speakers for the event were Talal Chahine and Sheikh Muhammad Hussein Fadlallah. Chahine sat to the right of Fadlallah, a position of prominence in the Middle East, spoke from the same podium as Fadlallah, and

conferred with him privately. Chahine was the representative at the event of a worldwide group of fund raisers. The government is in possession of a video tape of this event as well as still photographs showing El Aouar and Chahine's participation.

12. Among the items seized from El Aouar's residence on April 19, 2005 was a letter, written in Arabic and translated by a FBI Language Specialist, thanking Chahine for sponsoring 40 Lebanese orphans during the years 2000-2001. The binder also contained pictures of sponsored orphans. The government is aware that the sponsorship of orphans is a euphemism used by Hizballah to refer to the orphans of martyrs. This is a common public relations and recruitment tool used by Hizballah. Hizballah gains favor with the public in Lebanon by supporting "orphans," while at the same time recruiting others into the terrorist organization willing to sacrifice their lives in terrorist operations based in part on the promise that Hizballah will take care of their families. In fact, two individuals have pleaded guilty in this district to providing material support to Hizballah's orphans of martyrs program in Lebanon. Other evidence observed at El Aouar's residence during the searches included several photo albums depicting images of Talal Chahine and his family. These images showed Chahine and his family posing in and around a Hizballah outpost in Lebanon. The outpost is the sight of a Hizballah battle against the Israelis. The sign, which was

photographed, prominently displayed Hizballah's distinctive green and yellow emblem consisting of Arabic writing, a globe, a book, an olive branch, and an assault rifle gripped tightly in a raised arm by a clenched fist.

13. In addition to having connections at the highest levels of the foreign terrorist organization, Hizballah, Talal Chahine is also acquainted with the former Chief of Staff of the Lebanese Air Force and a former President of Lebanon.

14. When Elfat El Aouar's home was searched for the second time by the Federal Bureau of Investigation in September 2005, she confessed to an FBI agent on the scene that she was fully aware of all of Talal Chahine's activities.

## **Relief Requested**

Based upon Elfat El Aouar's access to millions of dollars, her lies to the IRS and Pretrial Services concerning her passports, her children's missing passports, her own missing Lebanese passport, her husband's flight to Lebanon, her Lebanese citizenship, the lack of a U.S./ Lebanon extradition treaty, the strength of the evidence against her, her husband's close connections with the upper echelon of a foreign terrorist organization, and her husband's close connections with high officials in the Lebanese government, it is respectfully requested that the Court order the detention

of Defendant as posing a serious risk of flight pending trial pursuant to the Bail Reform Act.

                          Respectfully submitted,

                          STEPHEN J. MURPHY
                          United States Attorney

                          s/KENNETH R. CHADWELL
                          Assistant United States Attorney
                          United States Attorney's Office
                          211 W. Fort Street, Suite 2001
                          Detroit, Michigan 48226
                          Phone: 313.226.9698
                          ken.chadwell@usdoj.gov
                          (P39121)

Dated: May 19, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, May 22, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Mr. James C. Thomas
    jctdetroitlaw.msn.com

                                           s/KENNETH R. CHADWELL
                                           Assistant United States Attorney
                                           211 W. Fort Street, Suite 2001
                                           Detroit, MI  48226
                                           Phone:  313.226.9698
                                           E-Mail: ken.chadwell@usdoj.gov